**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**STACEY EUGENE JOHNSON**                                                    **PLAINTIFF**

**v.**                          **Case No. 4:21-cv-00373-KGB**

**LESLIE RUTLEDGE, Attorney General;**
*et al.*                                                                      **DEFENDANTS**

<u>**ORDER**</u>

Before the Court is a motion to dismiss filed by defendants Leslie Rutledge, Attorney General of the State of Arkansas; Erin Hunter, Sevier County Prosecuting Attorney; Kermit Channell, Director of the Arkansas State Crime Laboratory; and Stacey Pectol, Clerk of the Courts of the Arkansas Supreme Court, all in their official capacities only (Dkt. No. 6).  Plaintiff Stacey Eugene Johnson filed a response in opposition to the motion (Dkt. No. 14), and defendants requested and were granted leave by this Court to file a reply (Dkt. Nos. 15, 16, 18).

For the following reasons, the Court grants, in part, and denies, in part, the motion to dismiss (Dkt. No. 6).

**I.      Background**

In 1997, Mr. Johnson was sentenced to death after a jury trial in Sevier County, Arkansas (Dkt. No. 1, ¶ 1).  Arkansas law provides a right to DNA testing pursuant to Act 1780 ("Act 1780").[1]  Since his conviction and his sentence was imposed, Mr. Johnson has pursued testing pursuant to Act 1780 (Dkt. No. 1, ¶ 3).  In this lawsuit, he "challenges the constitutionality of Act 1780 on its face, as applied by the State of Arkansas." (Dkt. No. 1, ¶ 4).

---

[1]  Act 1780 of the 2001 Acts of Arkansas, as amended by Act 2250 or the 2005 Acts of Arkansas, was codified as Arkansas Code Annotated §§ 16-112-201 to 208 of the Arkansas Code in 2005.

### A.    Claims

Mr. Johnson brings this action for declaratory and injunctive relief under 42 U.S.C. § 1983 against defendants in their official capacities (Dkt. No. 1).  Mr. Johnson asserts the following claims:  (1) denial of due process in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, asserting facial and as-applied challenges, (2) denial of the right to meaningful access to the courts in violation of the Petition Clause of the First Amendment to the United States Constitution, (3) cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, and (4) denial of the opportunity to prove actual innocence in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution (*Id.*, at 15-25).

### B.    Procedural History

Mr. Johnson was first convicted of Carol Heath's murder and sentenced to death in 1994. That conviction was reversed on appeal for evidentiary errors. *Johnson v. Arkansas*, 934 S.W.2d 179 (Ark. 1996) ("*Johnson I*").  Mr. Johnson was re-tried in 1997 and convicted again.  Mr. Johnson's retrial proceeded with new DNA testing having been conducted on certain evidence, including a partially smoked cigarette, green shirt, and African American hairs. 591 S.W.3d at 267-68.  "Under the new testing, the probability of the saliva on the cigarette belonging to anyone other than Johnson decreased to one in 28 million African Americans," and "the African American hairs found on and around Heath's body were consistent with Johnson's DNA and would occur in one of 720 million African Americans."  *Id.*  A second jury reached the same verdict after the second trial, and that conviction was affirmed on appeal. *Johnson v. Arkansas*, 27 S.W.3d 405 (Ark. 2000) ("*Johnson II*").  Numerous courts have examined Mr. Johnson's two trials and the evidence presented.  *See Johnson v. Arkansas*, 591 S.W.3d 265 (Ark. 2019) (examining the

evidence presented against Mr. Johnson).  As a result, the Court will not restate all of those details in this Order.

After his retrial, Mr. Johnson then filed an unsuccessful petition for post-conviction relief under Arkansas Rule of Criminal Procedure 37, alleging ineffective assistance of counsel.  *Johnson v. State*, 157 S.W.3d 151 (Ark. 2004) ("*Johnson III*").  At the same time, he filed a state *habeas corpus* petition seeking DNA testing under the version of Act 1780 of 2001 then in place.  He sought DNA testing of Caucasian hairs found in Ms. Heath's apartment and on the green shirt, and he sought re-testing of the partially smoked cigarette and some of the African American hairs.  *Johnson III*, 157 S.W.3d 159.

The Arkansas Supreme Court denied Mr. Johnson's request as to the Caucasian hairs because Mr. Johnson could have had them tested prior to trial and chose not to and because the prosecution stipulated that these hairs belonged to someone other than Mr. Johnson.  *Id.* at 162-63.  Thus, "the jury knew there were hairs that belonged to someone other than [Mr.] Johnson and it still convicted him."  *Id*. at 162.  The Court held that the hairs were not "'materially relevant to [Mr. Johnson's] assertion of actual innocence' as required by the then-applicable version of Act 1780."  *Id*. (quoting the prior version of Ark. Code Ann. § 16-112-202(c)(1)(B)).

The court also denied further re-testing of the partially smoked cigarette.  Between the first and second DNA tests, the odds of the saliva belonging to someone other than Mr. Johnson increased from one in 250 to one in 28 million.  *Id.* at 162-63.  Mr. Johnson claimed that new testing had been developed that could test for "new genetic markers," but the court noted that it was "extremely unlikely" that Mr. Johnson "and someone else had the exact same DNA genetic profile—down to a certainty of 1 in 28 million—and yet differed in other genetic markers."  *Id.* Given those odds, according to the Arkansas Supreme Court Mr. Johnson was merely "seeking an

endless succession of retesting of old evidence," and further testing of the cigarette was "unlikely to 'significantly advance'" his "'claim of innocence.'" *Id.*

As to the African American hairs, the court was under the mistaken impression that those hairs had not been retested since the first trial and remanded for further testing of those hairs to be conducted. *Johnson v. State*, 235 S.W.3d 872 (Ark. 2006) ("*Johnson IV*"). After the trial court found that the hairs had in fact been re-tested prior to the second trial, the Arkansas Supreme Court denied further retesting. *Id.* at 875-76.

Mr. Johnson then unsuccessfully pursued relief in federal court. *Johnson v. Norris*, Case No. 5:06-cv-00185 JLH, 2007 WL 2343883 (E.D. Ark.) (Holmes, J.), *aff'd*, 537 F.3d 840 (8th Cir. 2008), *cert. denied* 555 U.S. 1182 (2009).

Arkansas scheduled Mr. Johnson's execution for April 20, 2017. In the weeks leading up to his execution, Mr. Johnson filed several petitions seeking to recall the mandate or for a writ of *error coram nobis* in his state-court cases, a stay of his execution, and DNA testing of the same Caucasian hairs. 591 S.W.3d at 268-69.

Mr. Johnson filed a petition in the state trial court for post-conviction DNA testing of 26 pieces of evidence. The Arkansas Supreme Court categorized the evidence as: "(1) evidence of an alleged sexual assault; (2) evidence from the roadside park; and (3) evidence on and around Heath's body." *Id.*, at 268-69 n.2, n.3, n.4. The trial court denied Mr. Johnson's request, but the Arkansas Supreme Court granted a last-minute stay of execution and remanded for an evidentiary hearing on Mr. Johnson's petition for DNA testing. *Id.* at 269. At that hearing, Mr. Johnson presented evidence on three methods of DNA testing—touch DNA, mitochondrial DNA, and Y-STR DNA. *Id.* The trial court again denied Mr. Johnson's petition, concluding that he did not meet the requirements of Act 1780. *Id.*

The Arkansas Supreme Court affirmed on direct appeal and held that Mr. Johnson's proposed testing "could not raise a reasonable probability that Mr. Johnson did not commit the offense." *Id.*, at 270.  The Arkansas Supreme Court explained its application of the "reasonable probability" standard.  *Id.*, at 270-71.

Mr. Johnson filed a petition for rehearing, for the first time suggesting that the Arkansas Supreme Court's application of Act 1780 violated the Federal Constitution.  Pet for Rehearing, *Johnson v. State*, Ark. Sup. Ct. Case No. CR-18-700 (Dec. 17, 2019).  Mr. Johnson argued that the court "violated the[] principles of fundamental fairness" by concluding that Mr. Johnson's proposed DNA testing would not significantly advance his claim of innocence and by interpreting Act 1780 to require courts to consider the weight of the evidence against a prisoner in determining whether DNA testing would advance a claim of innocence.  *Id.*, at 2.

The Arkansas Supreme Court denied rehearing, declining to revisit its prior holdings.  It further noted that "for the first time in this case, Johnson contend[ed] that his claims implicate a right to due process and access to the courts under the United States Constitution."  *Johnson v. State*, 2020 Ark. 86, 2020 WL 830044, at *2 (Feb. 20, 2020).  Because entirely new arguments may not be raised for the first time in a petition for rehearing, *see* Ark. Sup. Ct. R. 2-3(g), the court refused to consider Mr. Johnson's "novel constitutional arguments that were raised for the first time in" his rehearing petition.  *Id.*

Mr. Johnson then filed a petition for writ of *certiorari* in the United States Supreme Court, raising the same federal constitutional claims that the Arkansas Supreme Court rejected.  The Court denied Mr. Johnson's petition without dissent.  *See Johnson v. Arkansas*, No. 20-48, 2021 WL 666378 (U.S. Feb. 22, 2021).

## II.      Applicable Legal Standards

Defendants in their motion to dismiss cite Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. No. 6).

### A.      Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims. In deciding a motion under Rule 12(b)(1) the Court must first "distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In other words, in a facial challenge, the court "determine[s] whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint, and drawing all reasonable inferences in favor of the plaintiff." *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted). In a factual attack, the court "inquires into and resolves factual disputes," *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002), and is free to "consider[ ] matters outside the pleadings," *Osborn*, 918 F.2d at 729 n.6. The nonmoving party in a factual challenge "does not have the benefit of 12(b)(6) safeguards." *Id.*

The Court examines a Rule 12(b)(1) motion as a facial attack on jurisdiction, affording Mr. Johnson's complaint Rule 12(b)(6) protection by "accepting as true all facts alleged in the complaint." *See Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010). As such, the Court "considers only the materials that are 'necessarily embraced by the pleadings and exhibits attached

to the complaint.'" *Cox v. Mortgage Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)).

### B.      Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court makes "this determination by considering only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 910–11 (8th Cir. 2016).  "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).  The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiffs. *Twombly*, 550 U.S. at 554-56.  Accordingly, a well-pleaded complaint will survive a motion to dismiss even if it appears recovery is very remote and unlikely. *Id.*

### III.      Analysis

### A.      Standing

Defendants move to dismiss Mr. Johnson's complaint claiming that he lacks standing to maintain this suit (Dkt. No. 7, at 13-15).  Mr. Johnson disagrees (Dkt. No. 14, at 17-19).  "Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks

standing to sue, the district court has no subject-matter jurisdiction." *ABF Freight System, Inc. v. International Brotherhood of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011).   "The 'irreducible constitutional minimum of standing' is that a plaintiff show (1) an 'injury-in-fact' that (2) is 'fairly. . . trace[able] to the challenged action of the defendant' and (3) is 'likely. . . [to] be redressed by a favorable decision' in court." *Id.* (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).   A plaintiff has suffered an injury-in-fact if he has experienced "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted).   Further, "[a] 'legally protected interest' requires only a 'judicially cognizable interest.'" *ABF*, 645 F.3d at 959.

The Court has studied the Arkansas statutory scheme, Ark. Code Ann. §§ 16-112-201 to 208, has studied the legal authorities cited by the parties with respect to standing, and accepts the allegations in Mr. Johnson's complaint as true.   At this stage of the litigation, the Court determines that Mr. Johnson has standing to maintain his procedural due process claim (Count I).   *See Skinner v. Switzer*, 562 U.S. 521 (2011).

For reasons explained in this Order, the Court determines that Mr. Johnson lacks standing to maintain a denial of right to meaningful access to courts claim (Count II).   The Court grants dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) as to Mr. Johnson's substantive due process claim (Count I), cruel and unusual punishment claim (Count III), and denial of opportunity to prove actual innocence claim (Count IV).

### B.    Immunity

#### 1.    Eleventh Amendment Immunity

Defendants assert that all or some of them are entitled to Eleventh Amendment immunity from suit and that Mr. Johnson's claims against them should therefore be dismissed on this basis (Dkt. No. 15-17).  Mr. Johnson responds in opposition to this argument (Dkt. No. 14, 19-23). "The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  However, "[t]o ensure the enforcement of federal law. . . the Eleventh Amendment permits suits for *prospective* injunctive relief against state officials acting in violation of federal law."  *Id.* (emphasis added) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  "A state official is amenable to suit to enjoin the enforcement of an unconstitutional state statute only if the officer has 'some connection with the enforcement of the act.'"  *Digital Recognition Network*, 803 F.3d 952, 960 (8th Cir. 2015) (citing *Ex Parte Young*, 209 U.S. at 157, 28 S.Ct. 441).

To determine whether an action against state officials in their official capacities avoids an Eleventh Amendment bar to suit, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)) (O'Connor, J., concurring).  Furthermore, defendants, who are sued in their official capacities, are amenable to suit in this action.  Defendants can be sued for prospective injunctive and declaratory relief in this action, as they have "'some connection with the enforcement of the act.'"  *Digital Recognition Network, Inc.*, 803 F.3d at 960 (citing *Ex Parte Young*, 209 U.S. at 157).

The Court has studied the Arkansas statutory scheme, Ark. Code Ann. §§ 16-112-201 to 208, has studied the legal authorities cited by the parties with respect to Eleventh Amendment immunity, and accepts the allegations in Mr. Johnson's complaint as true.   Mr. Johnson's complaint "clearly satisfies [the Court's] 'straightforward inquiry.'"   *Verizon Maryland, Inc.*, 535 U.S. at 645.  At this stage of the litigation, the Court determines that defendants are not entitled to Eleventh Amendment immunity.

## 2.    Judicial Immunity

Defendants maintain that, at a minimum, the Clerk of the Arkansas Supreme Court is a "judicial officer" and entitled to immunity from suit for any actions taken in her official capacity (Dkt. No. 7, at 17-18).   In his complaint, Mr. Johnson alleges with respect to the Clerk of the Arkansas Supreme Court:

> At the time of the Plaintiff's request for a hearing under the statute at issue in this case, the Arkansas Supreme Court had possession, control, and/or access to items of physical evidence collected during the investigation of the crime for which Plaintiff was convicted that likely contained biological material suitable for DNA testing, but which were either not tested previously or could now be tested with new technology that was not available at the time.  The ASC Clerk is sued in her official capacity for the purpose of obtaining declaratory and injunctive relief.

(Dkt. No. 1, ¶ 9).   Defendants acknowledge that, pursuant to Rule 3-4(c) of the Rules of the Supreme Court and Court of Appeals, in criminal cases "[p]hysical evidence, other than documents, shall not be transmitted [to the appellate court] unless directed by an order of the Court." (Dkt. No. 7, at 14-15).  Mr. Johnson does not respond to defendants' motion to dismiss the claims against Ms. Pectol on this basis.

The doctrine of quasi-judicial immunity extends judicial immunity "to officials other than judges. . . because their judgments are functionally comparable to those of judges -- that is, because they, too, exercise a discretionary judgment as a part of their function."   *Antoine v. Byers &*

*Anderson, Inc.*, 508 U.S. 429, 436 (1993) (quotations omitted).  Due to the presumption "that qualified, rather than absolute, immunity is sufficient to protect government officials in the exercise of their duties . . . the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994) (quotation omitted). The issue turns on "whether the official historically enjoyed such immunity at common law plus a practical analysis of the official's functions in modern times." *Id.*  For court clerks, absolute immunity has been extended to acts that are discretionary, taken at the direction of a judge, or taken according to court rules.  *See Antoine*, 508 U.S. at 436; *Robinson*, 15 F.3d at 109; *see also Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 928 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 1071 (2021).

The Court determines that the Clerk of the Arkansas Supreme Court is entitled to quasi-judicial immunity from Mr. Johnson's claims.

### C.    *Res Judicata*

Defendants take the position that, because "Johnson is attempting to relitigate his State-court Act 1780 petition," *res judicata* applies, and Mr. Johnson's claims fail (Dkt. No. 7, at 18-20).  Mr. Johnson responds in opposition (Dkt. No. 14, at 24-28).

*Res judicata* consists of issue preclusion and claim preclusion.  *Carwell v. Elevator Co. v. Leathers*, 101 S.W.3d 211, 216 (Ark. 2003).  *Res judicata* bars not only the relitigation of claims that were actually litigated in the first suit but also those claims that could have been litigated. *Beebe v. Fountain Lake Sch. Dist.*, 231 S.W.3d 628, 635 (Ark. 2006).  The claim-preclusion aspect of *res judicata* bars relitigation of a subsequent suit when:  (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both

suits involve the same parties or their privies.  *Id.* (citing *Office of Child Support Enforcement v. Willis,* 59 S.W.3d 438, 443 (2001)).  Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies.  231 S.W.3d at 635*; see also Reece v. Bank of New York Mellon, Tr. for CIT Mortg. Loan Tr. 2007-1*, 381 F. Supp. 3d 1009, 1017 (E.D. Ark. 2019).

This Court determines that *res judicata* does not apply to bar Mr. Johnson's current claims.  Mr. Johnson recounts the procedural history of his arguments in his complaint (Dkt. No. 1, ¶¶ 48-51).  In his complaint, he states in part:  "As of February 20, 2020, he has exhausted his remedies in state court, rendering authoritative the Arkansas Supreme Court's December 12, 2019, construction of Act 1780, which, as thus construed, is arbitrary and unconstitutional." (*Id.*, ¶ 50).  More specifically, Mr. Johnson contends in support of his due process claims in part:

> 57.    Post-conviction DNA testing in Arkansas remains virtually unavailable, however, despite the passing of Act 1780.  This is because the decisions of Arkansas courts, in Plaintiff's case and others, reveal consistently unreasonable and incorrect interpretations of Act 1780, such that virtually no litigant can meet the Act's requirements, thereby depriving litigants of their procedural due process rights.  While the Statute ostensibly creates a liberty interest by affording convicted individuals the opportunity for DNA testing, Arkansas courts have erected arbitrary barriers that frustrate the very right that the Statue purports to create. . . .
>
> . . .
>
> 60.    Contrary to the Arkansas Supreme Court's construction in the present case, the Statue does not require that petitioners establish that the DNA test results would "show actual innocence" or that petitioners exonerate themselves as an initial matter before they are permitted to receive testing. . . .

(Dkt. No. 1, ¶¶ 57, 60).  In other words, Mr. Johnson challenges as denying him procedural due process, among other rights, Act 1780 as construed by the Arkansas Supreme Court in his case and others.  *See Skinner*, 562 U.S. at 530 ("At oral argument in this Court, Skinner's counsel clarified the gist of Skinner's due process claim:  He does not challenge the prosecutor's conduct

or the decisions reached by the CCA in applying Article 64 to his motions; instead, he challenges, as denying him procedural due process, Texas' postconviction DNA status 'as construed' by the Texas courts."); at 533 ("As earlier noted. . . , Skinner does not challenge the adverse CCA decisions themselves; instead, he targets as unconstitutional the Texas statue they authoritatively construed.").  Mr. Johnson's current § 1983 suit which alleges constitutional violations in federal court is not the same cause of action as his attempt to obtain DNA testing under Act 1780 in Arkansas state court.

Mr. Johnson filed a petition for rehearing and petition to recall the mandate, both of which were denied by the Arkansas Supreme Court on February 20, 2020 (Dkt. No. 1, ¶ 50).  He acknowledges that he raised his constitutional arguments in the petition for rehearing but explains that the Supreme Court of Arkansas refused to "consider the merits of" what it determined to be "novel constitutional claims." (Dkt. No. 14, at 26 (citing *Johnson v. State*, 2020 Ark. 86, 2, 2020 WL 830044, at *1 (Ark. 2020)).  Mr. Johnson also filed a petition for *writ of certiorari* with the United States Supreme Court, which was denied February 22, 2021 (*Id.*, ¶ 51).  This Court agrees that the Supreme Court's denial for *writ of certiorari* does not constitute an adjudication on the merits and, therefore, does not implicate *res judicata*, contrary to defendants' arguments.  *See United States v. Carver*, 260 U.S. 482, 490 (1923); *Brown v. Allen*, 344 U.S. 443 (1953); *Laborers' Int'l Union of N. Am. Loc. No. 107 v. Kunco, Inc.*, 472 F.2d 456, 458 n.2 (8th Cir. 1973).  There is not a prior judgment on the merits, and *res judicata* does not apply.

For all of these reasons, the Court determines that the doctrine of *res judicata* does not bar Mr. Johnson's current claims.  The Court declines to dismiss Mr. Johnson's current claims on this basis.

### D.       Claims

Defendants also move to dismiss Mr. Johnsons's claims on the merits (Dkt. No. 7, at 20). However, defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and the Court applies those standards to evaluate defendants' motion.

### 1.       Due Process

In his complaint, at this stage of the litigation, Mr. Johnson brings both facial and as-applied challenges to Act 1780 under the Due Process Clause of the Fourteenth Amendment through § 1983 (Dkt. No. 1, ¶ 4 ("Plaintiff files this action to challenge the constitutionality of Act 1780 on its face, as applied by the State of Arkansas."), ¶ 65 (making arguments regarding Act 1780 "on its face" and "as applied specifically to Plaintiff.").

In regard to facial challenges in general, the majority of courts have adopted a definition of facial challenges as those seeking to have a statute declared unconstitutional in all possible applications. *See, e.g., Sabri v. United States*, 541 U.S. 600, 609 (2004); *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Steffel v. Thompson*, 415 U.S. 452, 474 (1974).  As-applied challenges are construed as an argument that the statute is unconstitutional as applied to precise plaintiffs. "Each holding carries an important difference in terms of outcome:  If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances."  *See Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 193-94 (6th Cir. 1997), *cert. denied*, 523 U.S. 1036 (1998).

### a.       Substantive Due Process Claim

This Court determines that Mr. Johnson fails to state a claim upon which relief may be granted for an alleged violation of substantive due process.  The Supreme Court held that "there is

no such substantive due process right." *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 72 (2009); *see also Skinner v. Switzer*, 562 U.S. 521, 525 (2011) ("*Osborne* has rejected substantive due process as a basis for [DNA testing] claims."). Specifically, the Supreme Court found that there was no long history of such a right of access to state evidence to perform DNA testing and that the mere novelty of such a claim was reason enough to doubt that substantive due process sustains it. *Osborne*, 557 U.S. at 72 (quoting *Reno v. Flores,* 507 U.S. 292, 303 (1993)).

### b.       Procedural Due Process Claim

In support of his procedural due process claim, Ms. Johnsons asserts, in part:  "First, the Arkansas Supreme Court construed Act 1780  to impose an unconstitutional barrier to Plaintiff's access to post-conviction remedies by way of DNA testing by reading into the Statute a near impossible requirement – that Plaintiff must prove his innocence as a precondition of obtaining DNA testing, when DNA testing is the only means in some cases, like Plaintiff's, to exonerate the wrongly convicted" (Dkt. No. 1, ¶ 59).  He claims that "an impossible burden of proof is placed on incarcerated plaintiffs to establish the condition of the physical evidence to be tested without first providing them with access to that evidence." (Dkt. No. 14, at 2).  He also asserts that: "Section 16-112-202(b)(6) and (8) of the Statute plainly require only that petitioners identify a theory of actual innocence and establish that testing 'may' produce new evidence that would 'support' that theory and show a 'reasonable probability' that they did not commit the crime(s) of conviction" (Dkt. No. 1, ¶ 60).  He claims that "[t]he statute, on one hand, recognizes the liberty interest of prisoners convicted of capital crimes to obtain post-conviction DNA testing, but on the other hand, frustrates the same liberty interest by permitting courts to make arbitrary predictions that the results of the DNA testing sough would be non-exculpatory." (Dkt. No. 14, at 2).

####              i.        Procedural Due Process Claim – Facial

For purposes of assessing Mr. Johnson's facial procedural due process claim with respect to Act 1780, "the question is whether consideration of [Mr. Johnson's] claim within the framework of [Arkansas's] procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Osborne*, 557 U.S. at 69 (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992) (internal quotation marks omitted); *see Herrera v. Collins*, 506 U.S. 390, 407-408 (1993) (applying *Medina* to postconviction relief for actual innocence); *Pennsylvania v. Finley,* 481 U.S. 551, 556 (1987) (postconviction relief procedures are constitutional if they "compor[t] with fundamental fairness")).    The Court in *Osborne* determined that "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided."  557 U.S. at 69.  "Historical practice is probative of whether a procedural rule can be characterized as fundamental."  *Medina*, 505 U.S. at 446 (citations omitted).

At this stage of the litigation, the Court concludes that Mr. Johnson has made allegations that call into question the facial constitutionality of Act 1780 sufficiently to survive a Rule 12(b)(6) motion to dismiss.  Courts that have reviewed these types of claims since *Osborne* and *Skinner* generally agree that even a plaintiff situated like Mr. Johnson may maintain a facial challenge on procedural due process grounds to a state law permitting post-conviction DNA testing.

Mr. Johnson has pled allegations that allow him to proceed beyond a Rule 12(b)(6) motion and to argue that Act 1780 does not provide sufficient process because, ultimately, the law does not actually guarantee any process by which a movant could be entitled to DNA testing. Generally, what is constant and identifiable in every varying factual situation where different

forms of the basic procedural due process safeguards appear is that they are meaningful and reasonable. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Mr. Johnson's complaint sufficiently places the question of whether there are meaningful or reasonable safeguards for procedural due process in Act 1780 before this Court.

### ii.      Procedural Due Process– As Applied

To the extent that Mr. Johnson seeks to invalidate Act 1780 on federal constitutional grounds, his claim is not barred by the *Rooker-Feldman* doctrine. That is so even though this portion of his challenge is "as applied." *Skinner* stands for the proposition that the existence of a state court judgment interpreting or relying upon a statute does not bar a federal court from entertaining an independent challenge to the constitutionality of that statute. 562 U.S. at 532 ("[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action. Skinner's federal case falls within the latter category."). At this stage of the proceeding, the Court makes no determination as to the merit of Mr. Johnson's claim, but the Court concludes that such a claim is not barred by the *Rooker-Feldman* doctrine. To the extent Mr. Johnson states such a claim here, the Court declines to dismiss it.

To the extent that Mr. Johnson argues that the Arkansas Supreme Court wrongly decided his case and seeks to have this Court overturn the Arkansas Supreme Court's decision in his case on issues unique to him, the Court determines his claim is barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine "precludes lower federal courts from exercising jurisdiction over actions seeking review of, or relief from, state court judgments." *Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016). Only the Supreme Court has jurisdiction over such actions. If a claim

is barred under *Rooker-Feldman*, the federal court lacks subject-matter jurisdiction and the case must be dismissed. *Webb as next friend of K. S. v. Smith*, 936 F.3d 808, 816–17 (8th Cir. 2019).

The Supreme Court has cautioned lower courts not to take a broad view of *Rooker-Feldman*, expressly limiting its application to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In *Exxon*, the Supreme Court clarified the "limited circumstances" in which *Rooker-Feldman* bars subject matter jurisdiction. *Id.* at 291. In its introductory remarks, the unanimous Court noted that the doctrine, which was "[v]ariously interpreted in the lower courts, . . . has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases." *Id.* at 283.

Additionally, the doctrine precludes subject-matter jurisdiction over claims which are "inextricably intertwined" with state court decisions. *Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004). If a claim is "inextricably intertwined" with a state court decision, a federal court lacks subject matter jurisdiction unless the federal plaintiff was not given a "reasonable opportunity" to raise their federal claim in the state proceedings. *Id.* The crucial inquiry in deciding whether a claim is inextricably intertwined with a state judgment is to determine "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting *an independent claim.*" *Brokaw v. Weaver*, 305 F.3d 660, 664-65 (7th Cir. 2002) (citation omitted) (emphasis added). "If a federal plaintiff presents some independent claim, *albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party,* then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. at 293 (internal alterations and quotations omitted, emphasis added).

The *Rooker-Feldman* doctrine also "may be inapplicable where federal plaintiffs have not been given a reasonable opportunity to raise their federal claims in the state proceedings." *Simes,* 354 F.3d at 827.

Fully aware that *Rooker-Feldman* is a narrow jurisdictional doctrine, this Court nonetheless holds that Mr. Johnson's as-applied challenge to the Arkansas courts' resolution of his complaint is barred by the *Rooker-Feldman* doctrine to the extent he plainly and broadly attacks the state court's *application* of Act 1780 to the facts of his case. *See Cooper v. Ramos*, *704 F.3d 772* (9th Cir. 2012); *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1264 (11th Cir. 2012).

## 2.    Right of Access To The Courts

Mr. Johnson also claims that defendants violated his right to meaningful access to the courts, presumably under the Petition Clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution (Dkt. No. 1, ¶¶ 66-69).  He maintains that refusal to release evidence for DNA testing under Act 1780 violates his right to meaningful access to the courts (*Id.*).

In *Christopher v. Harbury*, the Supreme Court explained that a plaintiff must specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002).  The underlying claim must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that "the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416.

While the right to access the courts exists, the Supreme Court and the Eighth Circuit Court of Appeals have recognized that the constitutional basis for the right is "unsettled." *Id.* at 415; *Harrison v. Springdale Water & Sewer Com'n,* 780 F.2d 1422, 1427 n.7 (8th Cir. 1996).  In

some circumstances, the Eighth Circuit has held that the right to access derives from the First Amendment.   *See, e.g., Whisman v. Rinehart,* 119 F.3d 1303, 1312–13 (8th Cir.1997); *Harrison,* 780 F.2d at 1427.   In order to prevail on such a claim, Mr. Johnson must show that the defendants acted with some intentional motivation to restrict his access to the courts. *See Whisman,* 119 F.3d at 1313 (stating that right-to-access cause of action requires proof of government action "designed" to prevent access to the courts); *Harrison,* 780 F.2d at 1428 (holding that plaintiff sufficiently pled a valid right-to-access claim by alleging that city employees retaliated against them for filing a lawsuit).

The Supreme Court has noted that the right to access the courts finds support in many parts of the Constitution, including the Due Process Clause.   *Harbury,* 536 U.S. at 415 n.12.   The overwhelming majority of cases involving a due process analysis arise in the prison-litigation context, as in situations where a prisoner's access to counsel, mail, or the law library has been curtailed.   *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 576 (1974) (considering an inmate's access-to-courts claim under the Due Process Clause).   In *Wilson v. Lawrence County,* 260 F.3d 946 (8th Cir.2001), the plaintiff alleged that his due process rights were violated by the defendants' failure to investigate potential leads in a homicide case, resulting in his wrongful imprisonment.   The Eighth Circuit has determined that "[t]he general test of whether executive action denying a liberty interest is egregious enough to violate due process is whether it shocks the conscience."   *Id.* at 956 (footnote omitted).

Moreover, to prove a violation of the right of meaningful access to the courts, a prisoner also must establish that the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.

*See Harbury*, 536 U.S. at 413, 415.  The actual injury requirement concerns the prisoner's standing to bring a claim and thus jurisdiction.

Here, Mr. Johnson was not prevented from filing and arguing the merits of a motion under Act 1780.  He disagrees with the outcome of that legal action in Arkansas state court and, to the extent that he currently brings an as-applied challenge that plainly and broadly attacks the state court's *application* of Act 1780 to the facts of his case, his claims are barred by the *Rooker-Feldman* doctrine as explained in this Order.

It appears that Mr. Johnson asserts a claim of denial of access to a court to pursue post-conviction claims seeking remedies such as a new trial, resentencing, or vacatur of his sentence, if the results of testing are exculpatory (Dkt. No. 1, ¶ 68). To the extent he does so, his claim is too speculative.  Under Mr. Johnson's theory, every unsuccessful claim under Act 1780 – regardless of the motion's merits – would represent a denial of access to the courts because it would deprive the plaintiff of DNA evidence that he could use to seek a new trial and attempt to demonstrate his innocence.  Although *Osborne* did not specifically address this issue, the Court clearly foreclosed a wholesale substantive right to DNA evidence.   Mr. Johnson's theory would create an impermissible, unchecked substantive right to DNA evidence if an Arkansas state court denies a motion under Act 1780.  *See Osborne*, 557 U.S. at 72 (there is no substantive due process right to post-conviction access to DNA evidence).

Finally, as explained, to have standing to maintain a claim for denial of access to court, a plaintiff must show an injury.  Mr. Johnson has established no such injury beyond speculation that possible DNA testing results might support a motion for new trial, resentencing, or vacatur of his sentence, which might or might not be granted.   Standing requires a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested

relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).  If this Court undertook to decide the merits of this claim, any such adjudication would constitute an impermissible advisory opinion, as there is no actual case or controversy because Mr. Johnson lacks standing.  "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

Both because of lack of subject matter jurisdiction and under Rule 12(b)(6), defendants are entitled to dismissal of Mr. Johnson's denial of right to meaningful access to courts claim.

### 3.    Eighth Amendment

Mr. Johnson also claims that his lack of access to the evidence for DNA testing has caused him to suffer cruel and unusual punishment under the Eighth Amendment.  Other courts have declined to find an Eighth Amendment right to the release of evidence for DNA testing. *See Wade v. Monroe Cty. Dist. Attorney*, No. 3:15-CV-00584, 2017 WL 4413195, at *9 (M.D. Pa. Sept. 29, 2017) ("defendants' refusal to release evidence or conduct DNA testing is not a 'punishment' proscribed by the Eighth Amendment"); *Williams v. McCulloch*, No. 4:15CV00070 RWS, 2015 WL 222170, at *3 (E.D. Mo. Jan. 14, 2015) ("state's refusal to conduct DNA testing is not punishment.").

In *McKithen*, the Second Circuit noted "'[t]he only way the Eighth Amendment is possibly implicated,' as a legal means for compelling the disclosure of evidence for post-conviction DNA testing, 'is if it permits a freestanding claim of actual innocence.'"  626 F.3d at 155.  However, "[t]he Supreme Court has left conspicuously unanswered the question whether the Eighth Amendment provides such a freestanding claim," although it has noted the "'difficult questions such a right would pose and the high standard any claimant would have to meet.'" *Id.* (quoting *Osborne*, 557 U.S. 71-72).  Further, *Osborne* reasoned that recognizing a substantive due

process right for post-conviction access to DNA testing would "cast these statutes into constitutional doubt" and "enlist the Federal Judiciary in creating a new constitutional code of rules for handling DNA." *Osborne*, 577 U.S. at 74 ("To suddenly constitutionalize this area would short-circuit what looks to be a prompt and considered legislative response.").

The Eleventh Circuit relied on this reasoning to reject an Eighth Amendment claim based on access to DNA testing: "One of the main reasons underlying the decision in *Osborne* is that it should be primarily up to the state and federal *legislatures* to fashion procedures that balance the powerful exonerating potential of DNA evidence with the need for maintaining the existing criminal justice framework and the finality of convictions and sentences." *Alvarez v. Attorney Gen. for Fla.,* 679 F.3d 1257, 1265 (11th Cir. 2012) (citing *Osborne*, 577 U.S. 62-63, 73); *see also Nelson v. Preleski*, No. 3:20CV778 (MPS), 2020 WL 4937991, at *9 (D. Conn. Aug. 24, 2020), *appeal dismissed*, No. 2020-2283, 2020 WL 8872838 (Fed. Cir. Dec. 1, 2020), *and appeal dismissed sub nom. Nelson v. Rovella*, No. 20-3146, 2021 WL 1010582 (2d Cir. Feb. 18, 2021) (declining to recognize an Eighth Amendment right to release of evidence for DNA testing).

Accordingly, in keeping with *Osborne*'s reasoning in declining to recognize a substantive due process right, this Court finds that Mr. Johnson has no right under the Eighth Amendment to release of evidence for postconviction DNA testing.

### 4.    Right To Prove Actual Innocence

Mr. Johnson also brings a claim for the denial of opportunity to prove actual innocence (Dkt. No. 1, ¶¶ 73-75).  Mr. Johnson asserts that, "[b]y refusing to release the physical evidence for DNA analysis, and thereby preventing Plaintiff from gaining access to evidence that could exonerate him, Defendants have denied Plaintiff the opportunity to make a conclusive showing that he is actually innocent of the crime for which he is currently incarcerated and sentenced to

die, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (*Id.*, ¶ 74).

The doctrine of "actual innocence" or "miscarriage of justice" is applied by courts as an "exception to overcome various procedural defaults" that stand in the way of habeas petitioners – for example, successive petitions, abusive petitions, failure to develop facts in state court, and failure to abide by state procedural rules. *McQuiggin v. Perkins*, 569 U.S. 383, 392-93 (2013) (citations omitted).

> In *McQuiggin*, the Supreme Court observed that:
>
> We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. *Herrera v. Collins*, 506 U.S. 390, 404-405 (1993). We have recognized, however, that a prisoner "otherwise subject to defenses of abusive or successive use of the writ [of habeas corpus] may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence." *Id.* at 404 (citing *Sawyer v. Whitley*, 505 U.S. 333 (1992)). *See also Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."). In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims. . . on the merits notwithstanding the existence of a procedural bar to relief. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera*, 506 U.S. at 404.

569 U.S. at 392.

Although the Supreme Court has assumed without deciding that this right exists to analyze arguments in past cases, the Supreme Court determined that the "body of our habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (assuming, without deciding, that a cognizable actual innocence claim existed to examine an asserted Eighth

Amendment substantive right by a habeas petitioner); *see also Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *Herrera* and assuming arguendo an actual innocence claim to examine a procedural right asserted by a habeas petitioner).

Moreover, as the Supreme Court noted in *Osborne* in recognizing that Osborne also "obliquely relie[d] on an asserted federal constitutional right to be released upon proof of 'actual innocence,'" 557 U.S. at 71, all parties to that dispute recognized this kind of claim "would be brought in habeas," *Id.*, at 72.   In *Osborne,* the Court assumed without deciding that such a constitutional right exists, "because even if so there [was] no due process problem" under federal habeas and discovery procedures. *Id.* (citing 28 U.S.C. § 2254 Rule 6; *Bracy v. Gramley,* 520 U.S. 899, 908–09 (1997)).

Mr. Johnson has not cited, and this Court has been unable to locate, any authority establishing that § 1983 can be used to bring before this Court an actual innocence claim that is assumed by some courts to exist within the habeas context and is employed by those courts in that context as a gateway or vehicle to assess a separate constitutional claim.

Accordingly, in keeping with *Osborne*'s reasoning in declining to recognize a substantive due process right, this Court finds that Mr. Johnson has no right under the Fourteenth Amendment to maintain in this § 1983 action a claim for the denial of opportunity to prove actual innocence and grants defendants' motion to dismiss this claim.

### IV.     Conclusion

For these reasons, the Court grants defendants' motion to dismiss the claims against defendant Stacey Pectol, Clerk of the Courts of the Arkansas Supreme Court, in her official capacity.  The Court grants defendants' motion to dismiss Mr. Johnson's substantive due process claim (Count I), his as-applied procedural due process claim to the extent it plainly and broadly

attacks the state court's *application* of Act 1780 to the facts of his case (Count I), his denial of right to meaningful access to courts claim (Count II), his cruel and unusual punishment claim (Count III), and his denial of opportunity to prove actual innocence claim (Count IV).

The Court denies defendants' motion to dismiss Mr. Johnson's facial procedural due process claim as to Act 1780 and his as-applied procedural due process claim as to Act 1780 to the extent that Mr. Johnson seeks to invalidate Act 1780 on federal constitutional grounds (Count I). The Court does not make any determination here about the ultimate merits of Mr. Johnson's arguments or any potential arguments to be made with respect to any future motion for judgment on the pleadings or motion for summary judgment; it finds only that the allegations of Mr. Johnson's complaint call the constitutionality of Act 1780 into question sufficiently to state the following claims and to allow Mr. Johnson to move beyond the initial pleading stage of this lawsuit.

So ordered this 31st day of March 2022.

_____
Kristine G. Baker
United States District Judge

26