## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**STACEY EUGENE JOHNSON**                                              **PLAINTIFF**

**v.**                              **Case No. 4:21-cv-00373 KGB**

**TIM GRIFFIN,** *et al.*                                              **DEFENDANTS**

### OPINION AND ORDER

Plaintiff Stacey Eugene Johnson, incarcerated and on death row since 1997, challenges the constitutionality of the Arkansas Supreme Court's construction of Act 1780 on its face and as applied by the State of Arkansas (Dkt. No. 1, ¶ 4).[1]  Johnson seeks DNA testing pursuant to Act 1780 and alleges that the denial of DNA testing based on the Arkansas Supreme Court's construction of Act 1780 amounts to a violation of his federal due process rights under the United States Constitution.  Johnson requests declaratory and injunctive relief (Dkt. No. 1, at 22).

Before the Court are the following motions:

(1) The motion for summary judgment filed by defendants Tim Griffin, Attorney General of Arkansas, Jana Bradford, Sevier County Prosecuting Attorney, and Theodore Brown, Director of the Arkansas State Crime Laboratory (collectively "Defendants") (Dkt. No. 74), to which Johnson responded (Dkt. No. 82) and Defendants replied (Dkt. No. 83).

(2) The motion for summary judgment filed by Johnson (Dkt. No. 76), to which Defendants responded (Dkt. No. 81) and Johnson replied (Dkt. No. 84).

In support of their respective motions, Johnson and Defendants submitted extensive briefing (Dkt. Nos. 75, 78).  Johnson, in accordance with Local Rule 56.1, also filed a statement of undisputed facts (Dkt. No. 77).  Defendants did not respond to the statement of undisputed facts,

---

[1]  Act 1780 of the 2001 Acts of Arkansas, as amended by Act 2250 or the 2005 Acts of Arkansas, was codified as Arkansas Code Annotated §§ 16-112-201 to 208 of the Arkansas Code in 2005.  Unless otherwise specified, when the Court refers to Act 1780 in this Opinion and Order, it refers to the statute as amended by Act 2250.

nor did Defendants submit their own statement of undisputed facts in support of their motion for summary judgment.[2]

For the following reasons, the Court grants Defendants' motion for summary judgment (Dkt. No. 74) and denies Johnson's motion for summary judgment (Dkt. No. 76).

## I.      Background

Johnson was first convicted of Carol Heath's murder and sentenced to death in 1994.  That conviction was reversed on appeal for evidentiary errors.  *Johnson v. Arkansas*, 934 S.W.2d 179 (Ark. 1996) ("*Johnson I*").  Johnson was re-tried in 1997 and convicted again.  Johnson's retrial proceeded with new DNA testing having been conducted on certain evidence, including a partially smoked cigarette, green shirt, and African American hairs.  *See Johnson v. Arkansas*, 2019 Ark. 391 ("*Johnson VI*") (explaining lower court posture).  "Under the new testing, the probability of the saliva on the cigarette belonging to anyone other than Johnson decreased to one in 28 million African Americans," and "the African American hairs found on and around Heath's body were consistent with Johnson's DNA and would occur in one of 720 million African Americans."  *Id.*  A second jury reached the same verdict after the second trial, and that conviction was affirmed on appeal.  *Johnson v. Arkansas*, 27 S.W.3d 405 (Ark. 2000) ("*Johnson II*").

---

[2]  Local Rule 56.1(b) of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas requires that the moving party file a "separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried."  Pursuant to Local Rule 56.1(c), "[a]ll material facts set forth in the statement filed by the moving party. . . shall be deemed admitted unless controverted by the statement filed by the non-moving party. . . ."

Given that Johnson's statement of facts is uncontroverted, all factual allegations in the statement will be accepted as undisputed.  For the sake of completeness, the Court recognizes that the issues presented in the cross motions for summary judgment are largely legal in nature; however, where factual determinations arise, the Court will rely on the uncontroverted facts in Johnson's statement of undisputed facts.

After his retrial, Johnson then filed an unsuccessful petition for post-conviction relief under Arkansas Rule of Criminal Procedure 37, alleging ineffective assistance of counsel. *Johnson v. State*, 157 S.W.3d 151 (Ark. 2004) ("*Johnson III*"). At the same time, he filed a state *habeas corpus* petition seeking DNA testing under the version of Act 1780 of 2001 then in effect. He sought DNA testing of Caucasian hairs found in Heath's apartment and on the green shirt, and he sought re-testing of the partially smoked cigarette and some of the African American hairs. *Johnson III*, 157 S.W.3d 159.

The Arkansas Supreme Court denied Johnson's request as to the Caucasian hairs on the grounds that Johnson could have had them tested prior to trial and chose not to and because the prosecution stipulated that these hairs belonged to someone other than Johnson. *Id.* at 162-63. Thus, "the jury knew there were hairs that belonged to someone other than Johnson and it still convicted him." *Id*. at 162. The Arkansas Supreme Court held that the hairs were not "'materially relevant to [Johnson's] assertion of actual innocence' as required by the then-applicable version of Act 1780." *Id*. (quoting the prior version of Ark. Code Ann. § 16-112-202(c)(1)(B)).

The Arkansas Supreme Court also denied further re-testing of the partially smoked cigarette. Between the first and second DNA tests, the odds of the saliva belonging to someone other than Johnson increased from one in 250 to one in 28 million. *Id.* at 162-63. Johnson claimed that new testing had been developed that could test for "new genetic markers," but the Arkansas Supreme Court noted that it was "extremely unlikely" that Johnson "and someone else had the exact same DNA genetic profile—down to a certainty of 1 in 28 million—and yet differed in other genetic markers." *Id.* Given those odds, according to the Arkansas Supreme Court, Johnson was merely "seeking an endless succession of retesting of old evidence," and further testing of the cigarette was "unlikely to 'significantly advance' his 'claim of innocence.'" *Id.*

3

As to the African American hairs, the court was under the mistaken impression that those hairs had not been retested since the first trial and remanded for further testing of those hairs to be conducted. *Johnson v. State*, 235 S.W.3d 872 (Ark. 2006) ("*Johnson IV*"). After the trial court found that the hairs had in fact been re-tested prior to the second trial, the Arkansas Supreme Court denied further retesting. *Id.* at 875-76.

Johnson then unsuccessfully pursued relief in federal court. *Johnson v. Norris*, Case No. 5:06-cv-00185 JLH, 2007 WL 2343883 (E.D. Ark.), *aff'd*, 537 F.3d 840 (8th Cir. 2008), *cert. denied* 555 U.S. 1182 (2009).

Arkansas scheduled Johnson's execution for April 20, 2017. In the weeks leading up to his execution, Johnson filed several petitions seeking to recall the mandate or for a writ of *error coram nobis* in his state-court cases, a stay of his execution, and DNA testing of the same Caucasian hairs. *Johnson VI*, 2019 Ark. 391 at 5-7.

Johnson filed a petition in the state trial court for post-conviction DNA testing of 26 pieces of evidence. The Arkansas Supreme Court categorized the evidence as: "(1) evidence of an alleged sexual assault; (2) evidence from the roadside park; and (3) evidence on and around Heath's body." *Johnson VI*, 2019 Ark. at 5-7 n.2, n.3, n.4. The trial court denied Johnson's request, but the Arkansas Supreme Court granted a last-minute stay of execution and remanded for an evidentiary hearing on Johnson's petition for DNA testing. *Johnson v. State*, 2017 Ark. 138, 2017 WL 1455044 at *1 ("*Johnson V*"); *see Johnson VI*, 2019 Ark. 391 at 7. At that hearing, Johnson presented evidence on three methods of DNA testing—touch DNA, mitochondrial DNA, and Y-STR DNA. *Id.* The trial court again denied Johnson's petition, concluding that he did not meet the requirements of Act 1780. *Id.*

The Arkansas Supreme Court affirmed on direct appeal and held that Johnson's proposed testing "could not raise a reasonable probability that Johnson did not commit the offense." *Id.*, at 270. The Arkansas Supreme Court explained its application of the "reasonable probability" standard. *Id.*, at 270-71.

Johnson filed a petition for rehearing, for the first time suggesting that the Arkansas Supreme Court's application of Act 1780 violated the Federal Constitution. Pet. for Rehearing, *Johnson v. State*, Ark. Sup. Ct. Case No. CR-18-700 (Dec. 17, 2019). Johnson argued that the court "violated the[] principles of fundamental fairness" by concluding that Johnson's proposed DNA testing would not significantly advance his claim of innocence and by interpreting Act 1780 to require courts to consider the weight of the evidence against a prisoner in determining whether DNA testing would advance a claim of innocence. *Id.*, at 2.

The Arkansas Supreme Court denied rehearing, declining to revisit its prior holdings. It further noted that "for the first time in this case, Johnson contend[ed] that his claims implicate a right to due process and access to the courts under the United States Constitution." *Johnson v. State*, 2020 Ark. 86, 2020 WL 830044, at *2 (Feb. 20, 2020). Because entirely new arguments may not be raised for the first time in a petition for rehearing, *see* Ark. Sup. Ct. R. 2-3(g), the Arkansas Supreme Court refused to consider Johnson's "novel constitutional arguments that were raised for the first time in" his rehearing petition. *Id.*

Johnson then filed a petition for writ of *certiorari* in the United States Supreme Court, raising the same federal constitutional claims that the Arkansas Supreme Court rejected. The Court denied Johnson's petition without dissent. *See Johnson v. Arkansas*, No. 20-48, 2021 WL 666378 (U.S. Feb. 22, 2021).

## II.    Procedural History In The Present Case

Johnson brings this action for declaratory and injunctive relief under 42 U.S.C. § 1983 against defendants in their official capacities (Dkt. No. 1).  Johnson asserted the following claims in his complaint:  (1) denial of due process in violation of the Due Process Clause—procedural and substantive—of the Fourteenth Amendment of the United States Constitution, asserting facial and as applied challenges, (2) denial of the right to meaningful access to the courts in violation of the Petition Clause of the First Amendment to the United States Constitution, (3) cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, and (4) denial of the opportunity to prove actual innocence in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution (*Id.*, at 15-25).

By the Court's Order on Defendants' motion to dismiss, the Court dismissed all of Johnson's claims except Johnson's procedural due process claim as to Act 1780 to the extent that Johnson seeks to invalidate the Arkansas Supreme Court's construction of Act 1780 on federal constitutional grounds (Dkt. No. 19).  The Court dismissed Johnson's claim to the extent his claim relied on substantive due process grounds (*Id.*).  Defendants subsequently sought interlocutory appeal as to the Court's Order (Dkt. No. 22).  On June 5, 2023, the Eighth Circuit Court of Appeals unanimously affirmed the Court's decision (Dkt. No. 29).  *See Johnson v. Griffin*, 69 F.4th 506 (8th Cir. 2023).  Following the Eighth Circuit Court of Appeals' decision, limited discovery proceeded.

Defendants then filed a motion for summary judgment (Dkt. No. 74), to which Johnson responded (Dkt. No. 82) and Defendants replied (Dkt. No. 83).  Johnson similarly filed a motion for summary judgment (Dkt. No. 76), to which Defendants responded (Dkt. No. 81) and Johnson

6

replied (Dkt. No. 84).  Defendants and Johnson both assert that they are respectively entitled to judgment as a matter of law.

### III.    Legal Standard For Summary Judgment

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and that the movant is entitled to entry of judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017).  While the existence of genuine disputes of material fact often determines whether a movant is entitled to summary judgment, "[t]he mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  In the present case, there are no genuine disputes of material fact to be tried.

### IV.    Discussion

#### A.    Standing

Defendants contend that Johnson lacks standing (Dkt. No. 75).  Defendants concede that the Court's March 31, 2022, Order held that Johnson has standing to pursue his claim (*Id.* at 12).  Defendants also concede that the Eighth Circuit Court of Appeals ruled that Johnson has standing to pursue his procedural due process claims (*Id.*).  Defendants nevertheless argue that a case that was pending before the United States Supreme Court at the time of filing, *Gutierrez v. Saenz,* could abrogate these prior rulings (*Id.*; *see* 606 U.S. 305 (2025)).  Defendants also assert a new argument against standing:  that even if the Arkansas Supreme Court's interpretation of Act 1780 violated procedural due process, Johnson's alleged injury is not redressable because the state courts would deny Johnson testing on other grounds (*Id.*, at 13).

The Court rejects Defendants' first standing argument.  First, counsel for the parties represent that the Supreme Court's decision in *Gutierrez v. Saenz* did not abrogate the Eighth Circuit's earlier decision on standing and sovereign immunity in this case (Dkt. No. 85).  The Court agrees with this characterization that the Supreme Court held that "Gutierrez has standing to challenge Texas's DNA testing procedures under the Due Process Clause."  606 U.S. at 321.  The Court finds that binding Supreme Court precedent supports its prior determination that Johnson has standing to pursue his claims (Dkt. No. 75, at 12).

The Court also rejects Defendants' alternative argument, raised for the first time in their briefing (Dkt. No. 75, 13–14).  Defendants claim that Johnson lacks standing because, notwithstanding the alleged due process violation of the Arkansas Supreme Court's interpretation of Act 1780, Defendants have alternative grounds to deny Johnson's request for DNA testing under Act 1780 (*Id.*).  Defendants posit that the Sevier County Circuit Court's ruling denying Johnson's petition as not timely means that Johnson's alleged injury is not redressable because Defendants have alternative grounds on which to deny Johnson access to testing (*Id.*).

The Court is unconvinced.  The Supreme Court addressed, and rejected, the same line of argument in *Gutierrez* and *Reed v. Goertz*, 598 U.S. 230 (2023).  In both cases, the prosecutor claimed that a declaratory judgment in the action would not change their conduct and that they would rely on alternative grounds to deny the request for DNA testing.  *See Gutierrez*, 606 U.S. at 320 (explaining Sanez asserted his conduct would not change and that the *Reed* prosecutor asserted the same thing); *Reed*, 598 U.S. at 249 (Thomas, J., dissenting) (explaining the prosecutor maintained that declaratory judgment would not change his conduct).  However, the Supreme Court found these alternative grounds did not defeat standing.  "The reason is simple:  That a prosecutor might eventually find another reason, grounded in [Texas's DNA testing statute] or

elsewhere, to deny a prisoner's request for DNA testing does not vitiate his standing to argue that the cited reasons violated his rights under the Due Process Clause." *Gutierrez*, 606 U.S. at 320–21 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992)).

The Court finds that Johnson has a redressable injury, notwithstanding any alternative grounds for denial of his Act 1780 claim, and accordingly has standing to pursue his claim. Because the Court finds that it has jurisdiction to proceed under Article III, the Court now addresses Johnson's Due Process Clause claims.

### B.    Procedural Due Process

Johnson and Defendants filed cross motions for summary judgment on procedural due process grounds. Johnson claims that he is entitled to judgment as a matter of law as to his challenges to the constitutionality of the Arkansas Supreme Court's construction of Act 1780 (Dkt. No. 78). Defendants claim that they are entitled to judgment as a matter of law on Johnson's constitutional challenge (Dkt. No. 75).

### 1.    Legal Standard

Under the Fourteenth Amendment to the United States Constitution, "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause "imposes procedural limitations on a State's power to take away protected entitlements." *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 67 (2009). "To establish a violation of a procedural due process right, the plaintiff must show [] that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural

rights prior to depriving him of the property interest." *Torgerson v. Roberts Cnty. of South Dakota*, 139 F.4th 638, 644 (8th Cir. 2025) (internal quotations omitted).

It is well settled that "[i]ndividuals convicted of crimes in state court 'have a liberty interest in demonstrating their innocence with new evidence under state law.'" *Gutierrez*, 606 U.S. at 314 (quoting *Osborne*, 557 U.S. at 68); *see Johnson*, 69 F.4th at 510.

This "'state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right.'" *Osborne*, 557 U.S. 68 (quoting *Connecticut Bd. Of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)). If a state's post-conviction DNA testing scheme "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation'" then it is a violation of the Due Process Clause. *Osborne*, 557 U.S. at 69 (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)); *see Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987) (testing whether proceedings "fully comported with the fundamental fairness mandated by the Due Process Clause."). When the operation of a challenged rule is "fundamentally inadequate to vindicate the [underlying] substantive right[]," then a federal court may invalidate the state's scheme. *Osborne*, 557 U.S. at 69.

The Supreme Court directs that courts conducting the fundamental fairness inquiry should look to factors including the "historical treatment" of the process to be afforded in similar proceedings, the "operation of the challenged rule," and Supreme Court precedents. *Medina*, 505 U.S. at 446. In other post-conviction contexts, the Supreme Court has held that a key element of procedural due process is to protect "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (citing *Dent v. West Virginia*, 129 U.S. 114, 123 (1889) (explaining that protection from arbitrary government action is central to due process)). Other

10

longstanding principles of fundamental fairness include that a state cannot render a liberty interest worthless or meaningless.  *Griffin v. Illinois*, 351 U.S. 12, 17 (1956).  Indeed, it transgresses principles of fundamental fairness for the state to "keep the word of promise to the ear of those illegally convicted and break it to their hope."  *Id.* at 24 (Frankfurter, J., concurring).

Lastly, Defendants suggest that the proper legal standard for the Court to apply to this due process inquiry is the "*Osborne* test" (Dkt. No. 75, at 16–17).  Defendants describe the test as follows:  "at a minimum, that a state's 'procedures pass muster if they compare favorably with Alaska's' in *Osborne*." (*Id.* at 17) (quoting *Cunningham v. Dist. Atty's Off. For Escambia Cnty.*, 592 F.3d 1237, 1263 (11th Cir. 2010)).  Moreover, Defendants point out that "'[e]very court of appeals to have applied the *Osborne* test to a state's procedure for postconviction DNA testing has upheld the constitutionality of it.'" (*Id.*, at 16–17 (quoting *Huey v. Kunzweiler*, 847 F. App'x 530, 535 (10th Cir. 2021) (quoting *Cromartie v. Shealy*, 941 F.3d 1244, 1252 (11th Cir. 2019))).

### 2.   Analysis

Defendants argue that the Arkansas Supreme Court's construction of Act 1780 is constitutional on its face, while Johnson asserts it is facially unconstitutional.  Defendants also contend that, as applied to Johnson, the Arkansas Supreme Court's construction of Act 1780 is constitutional., while Johnson asserts that, as applied to him, the construction of Act 1780 is unconstitutional.[3]

---

[3]  This Court's analysis is limited (Dkt. No. 19, at 17) (determining that *Rooker-Feldman* bars jurisdiction over actions seeking review of, or relief from, state court judgments)).  Because of this limitation, the Court determines that the due process analysis is the same, regardless of whether the construction is challenged on its face or as applied to Johnson.  The Court is not permitted to inquire into the factual determination of whether the denial of DNA testing on the facts presented in *Johnson VI* was unconstitutional.  *See* 2019 Ark. 391.  Instead, the Court determines whether the standard articulated by the Arkansas Supreme Court in Johnson's case, and applied generally to Act 1780 requests, violates procedural due process.  Because it is the formulation of the standard, and not the application of said standard to Johnson, there is no

Johnson frames his procedural due process challenge in this way:

> Johnson does not claim that Act 1780's "reasonable probability" standard does not meet the *Osborne* test *if* constitutionally construed—that is if the plain text setting forth the "reasonable probability" standard were construed in line with longstanding interpretations of what constitutes a "reasonable probability" in post-conviction contexts.    Rather, the Arkansas Supreme Court's authoritative construction of Act 1780 unconstitutionally converts the "reasonable probability" standard into a sufficiency-of-the-evidence test that does not pass muster under the *Osborne* test.

(Dkt. No. 84, at 16).  Defendants agree that what Johnson challenges is not Act 1780's materiality requirement, but instead Johnson claims "that the Arkansas Supreme Court read that requirement in his case to mean that he must prove further DNA testing would exonerate him." (Dkt. No. 75, at 16).  Defendants maintain that the Arkansas Supreme Court has not adopted or applied such a construction to Act 1780 (*Id.*).

When assessing the Arkansas Supreme Court's construction of Act 1780, Johnson asserts that "the constitutional issue arises because the Arkansas Supreme Court interprets Act 1780's 'reasonable probability' standard to require *no* evaluation of anything other than the sufficiency and weight of *inculpatory* evidence presented at trial which led to Johnson's conviction." (Dkt. No. 84, at 5).  Having reviewed the Arkansas Supreme Court cases cited by the parties in their briefing, this Court is not convinced that Johnson's assertion is a fair assessment of the work done by the Arkansas Supreme Court in these cases.

Johnson also maintains that the Arkansas Supreme Court's construction of Act 1780 and application of the "reasonable probability" standard differs from how federal courts apply similar reasonable probability standards in other contexts and from how other states apply that standard

difference between the facial and as applied challenges.  Likewise, the Court's Opinion and Order does not opine as to whether Johnson is entitled to relief under a construction of Act 1780 that comports with procedural due process.

12

when construing their own DNA testing statutes (Dkt. Nos. 78, at 29–31, 53–61; 84, at 7–8, 20–29). According to Johnson, this mismatch in construction transgresses principles of fundamental fairness (Dkt. No. 78, at 62). To the extent that the Arkansas Supreme Court's construction differs from other federal and state interpretations of reasonable probability, the Court is unable to conclude that this interpretative difference is a violation of procedural due process. Johnson's arguments that the Arkansas Supreme Court's construction stands alone, even if true, do not address whether that construction comports with the benchmark set in *Osborne*. *See Reed v. Goertz*, 136 F.4th 535, 546 (5th Cir. 2025) ("It is not enough to disagree with how the state has elected to use its permissible discretion or to complain that it has misapplied its own standards. Instead, [Johnson] would have to show that those standards are fundamentally unfair or unjust in some way. . . ."). This Court's review is not of the "correctness" of the Arkansas Supreme Court's statutory interpretation.

Next, Johnson maintains:

> Act 1780, construed by the Arkansas Supreme Court to require a sufficiency-of-the-evidence test, imposes a higher standard even than those procedures which require a petitioner to demonstrate that DNA testing results conclusively lead to exoneration. Because the Arkansas Supreme Court construes Act 1780 not only as requiring petitioners to overcome the sufficiency of the evidence leading to conviction, but also as requiring examination of a petitioner's theory of innocence in the light most favorable to the State, the likelihood that a petitioner would be able to even demonstrate that favorable testing amounts to conclusive exoneration is almost nil. . . .

(Dkt. No. 84, at 18–19). For these reasons, Johnson characterizes the Arkansas Supreme Court's construction of Act 1780 as imposing a burden even higher than that articulated by *Osborne* (*Id.*, at 18).

Johnson focuses much of his argument on an assertion that "Arkansas courts have denied testing to many other petitioners under Act 1780's unconstitutional rubric even where favorable

13

testing, if granted, could have inculpated another suspect." (Dkt. No. 78, at 50–51). In other words, Johnson argues that the Arkansas Supreme Court's interpretation is fundamentally unfair because it does not allow Johnson to test material that might exculpate him by inculpating another individual. Accepting as true Johnson's description, this is not a sufficient reason to determine that Act 1780's construction violates *Osborne* or due process. In *Reed v. Goertz*, the Fifth Circuit rejected a similar argument that the state court's construction prevents DNA testing of materials that might show innocence by inculpating a third party. 136 F.4th at 546–47. The Fifth Circuit explained that "evidence that 'fails to exclude another suspect' does not necessarily fall into the [category of proving a convicted person's innocence;]" therefore "we cannot say that this [exculpatory results] requirement is fundamentally unfair." *Id.* Like the testing sought in *Reed*, Johnson seeks testing that only has the potential to inculpate a third party, not to exonerate him. The Court is not prepared on the arguments presented to conclude that such a requirement fails to satisfy the benchmark set in *Osborne*.

Johnson also argues that Defendants' reliance on the Arkansas Supreme Court's construction of Act 1780 relegates the process under Act 1780 to a meaningless ritual (Dkt. No. 78, at 51). Johnson, citing record evidence, argues that the Arkansas Supreme Court's constructions of the "reasonable probability" standard raises the bar to such a degree "that the procedures have been rendered meaningless and, as a result, petitions are almost never granted." (*Id.*, at 19; *see also* Dkt. No. 78, at 9–10). The undisputed record before the Court is clear that it is extraordinarily unlikely for a petitioner to gain access to DNA testing under the Arkansas Supreme Court's construction of Act 1780 (Dkt. No. 79-7). Likewise, the undisputed record before the Court demonstrates that there is no uniform process for individuals to apply for and obtain access to DNA testing (*Id.*; *see* Dkt. No. 79-8; 79-9; 79-11; 79-12; 79-3; 79-4; 79-5). This

14

undisputed record evidence before the Court gives the Court substantial pause, considering the fundamental fairness and basic protections that due process should afford. However, that it is rare for a petitioner to be granted access to testing under the Arkansas Supreme Court's construction of Act 1780 does not in and of itself make the liberty interest meaningless. That is, the result does not determine the lawfulness of the Arkansas Supreme Court's construction of Act 1780 when compared to the benchmark set in *Osborne*.

Having considered the parties' briefs and the record before the Court, the Court cannot conclude that the Arkansas Supreme Court's construction of Act 1780 violates the standards set forth in *Osborne*. For that reason, the Court determines that the Arkansas Supreme Court's construction of Act 1780 is not so fundamentally inadequate to vindicate postconviction-DNA-testing rights whether on its face or as applied to Johnson.

### V. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment and denies Johnson's motion for summary judgment (Dkt. Nos. 74; 76).

It is so ordered this 31st day of March, 2026.

Kristine G. Baker
Chief United States District Judge